Caitlin C. Blanche (SBN 254109)
caitlin.blanche@klgates.com
Damon M. Pitt (SBN 291473 )
damon.pitt@klgates.com
K&L GATES LLP
1 Park Plaza
Twelfth Floor
Irvine, CA 92614
Telephone:  (949) 253 0900
Facsimile:   (949) 253 0902

Attorneys for Plaintiff
GLOBAL RESCUE JETS, LLC, d/b/a JET RESCUE

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL RESCUE JETS LLC, a Delaware corporation d/b/a JET RESCUE,<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California corporation, d/b/a Kaiser Permanente,<br><br>Defendant. | Case No.: 3:19-cv-01737-L-NLS<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT - ASSIGNEE**<br>2. **BREACH OF CONTRACT - THIRD-PARTY BENEFICIARY**<br>3. **BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**<br>4. **QUANTUM MERUIT**<br>5. **UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL**<br><br><br>Judge:          M. James Lorenz<br>Magistrate Judge:  Nita L. Stormes |

Plaintiff, Global Rescue Jets, Inc., a Delaware corporation d/b/a/ Jet Rescue ("Jet Rescue" or "Plaintiff"), files this First Amended Complaint against Defendant Kaiser Foundation Health Plan, Inc., a California corporation, doing business as Kaiser Permanente ("Kaiser" or "Defendant"), and states on information and belief as follows:

Recycled Paper

FIRST AMENDED COMPLAINT                                    CASE NO. 19-CV-01737-L-NLS

**NATURE OF THE ACTION**

1.     Jet Rescue files this Complaint against Kaiser because Defendant has improperly, and in bad faith, drastically underpaid Plaintiff's claims for medically necessary international air transportation services Jet Rescue provided to subscribers of Kaiser's plans of insurance (the "Kaiser Subscribers"), Patient X ("Patient X") and Patient Y ("Patient Y") for $283,500 in charges and $232,700, respectively.  Plaintiff provided medically necessary transportation for Patient X from Yahualica, Jalisco, Mexico to Kaiser Permanente San Diego Medical Center in San Diego, California ("Kaiser Hospital").  Plaintiff also provided medically necessary transportation for Patient Y from Mazatlan, Mexico to Kaiser Hospital.

2.     Kaiser is a party to Medicare Advantage Plans for Patients X and Y (the "Plans"), which provide supplemental benefits for coverage of life-saving international air ambulance transportation, and for which Patients X and Y paid premiums to obtain. Under these Plans, Kaiser agreed to reimburse Patients X and Y for the charges that Patients X and Y incurred. Patients X and Y assigned their rights to the benefits due under the Plan for the air ambulance services Plaintiff provided.  For the reasons discussed more fully below, Kaiser has improperly, and in bad faith, drastically underpaid these claims.

3.     Since 2014, Jet Rescue has attempted in good faith to resolve the dispute regarding Plaintiff's claim for Patient X amicably. Despite Jet Rescue's multiple requests, Kaiser did not adjudicate the claim until January 28, 2016, over a year after the underlying services were rendered and the claim was submitted by Jet Rescue for reimbursement.  Despite the substantial documentation of clear medical necessity for the transport, and without explanation, Kaiser made partial payment of the claim for Patient X, reimbursing Jet Rescue only $23,096.63, or a mere 8% of the total billed amount of $283,500.00 (and which does not include the substantial interest that has accrued on the claim under California law).

4.     In addition, after Jet Rescue provided the international air ambulance

FIRST AMENDED COMPLAINT                          CASE NO. 19-CV-01737-L-NLS

services to Patient Y on May 18, 2016, and despite the substantial documentation of clear medical necessity for the transport, nearly eight months after Jet Rescue submitted the claim for reimbursement, and without explanation, Kaiser made partial payment of the claim for Patient Y, reimbursing Jet Rescue only $17,365.73, or a mere 8% of the total billed amount of $215,257.55 (and which does not include the substantial interest that has accrued on the claim under California law).

5.    This First Amended Complaint arises from the claims for Patients X and Y, who were covered by a Plan that provides optional supplemental benefits coverage in addition to coverage provided by Medicare.  Optional supplemental benefits are health services *not* covered by Medicare that are purchased *at the option of* a Medicare Advantage Plan enrollee and are paid for in full, directly by (or on behalf of) the Plan enrollee, in the form of premiums or cost-sharing.  42 C.F.R. § 422.100(c)(2)(ii)

6.    While Medicare does require Medicare Advantage Plans to provide coverage for certain benefits in a supplemental plan, international air ambulance coverage is not one of those benefits. As discussed more fully below, Medicare regulations under the Medicare Act do not contemplate coverage for international air ambulance benefits where the transport is initiated in a foreign country and ends in the United States, and only provide for international air ambulance coverage in the limited circumstances where the patient is admitted to a foreign hospital.   Thus, a Medicare Advantage Plan that offers international air ambulance benefits, such as the Kaiser Plans at issue here, are offering them as optional supplemental benefits that are not covered by Medicare and not funded in any way by the Medicare program.

7.    The claims asserted by this First Amended Complaint, therefore, involve a dispute between Jet Rescue, the provider of the international air ambulance services provided to Patients X and Y, and Kaiser, as the third-party insurer offering the supplemental benefits for which Patients X and Y, upon information and belief, paid a premium.  Thus, despite the fact that the Plans at Medicare Advantage Plans, the benefits at issue here are not Medicare benefits and, therefore, the Medicare appeals

Recycled Paper

process is inapplicable. Even if the Medicare Act was applicable, which it is not, the Medicare guidelines provide no guidance for how to calculate international air ambulance reimbursements, and so requiring Jet Rescue to follow the Medicare appeals process for the claims for Patients 1 and 2 would be futile.

8.    Moreover, as discussed more fully below, Kaiser waived the Medicare appeals requirement in its course of dealing with Jet Rescue regarding the claim for Patient 1.

9.    Kaiser has subsequently interpreted the Plans to substitute Medicare rates for usual, reasonable and customary reimbursement rates for air ambulance services, despite the fact that neither Medicare nor Medicare rates under the Medicare Act, apply to international services which include international air ambulance services.

10.    Accordingly, Jet Rescue asserts claims against Kaiser for breach of the Plan, breach of the duty of good faith and fair dealing, *Quantum Meruit*, and violation of the California Unfair Competition Law.

11.    As a result of Kaiser's breaches, Jet Rescue has suffered damages of at least $460,368.70, not including interest.

## THE PARTIES

12.    Plaintiff Jet Rescue is a company organized under the laws of the State of Florida, with its headquarters and principal place of business at 7777 Glades Road, Suite 100, Boca Raton, Florida, 33434.

13.    Kaiser is a corporation incorporated under the laws of the State of California, with its principal place of business at 1 Kaiser Plaza, 16L, Oakland, California 94612. Upon information and belief, Kaiser is licensed to do business, and is engaged in the business of, selling commercial health insurance in the State of California.

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1132, which provides the district courts with original jurisdiction over civil actions

-4-

Recycled Paper

between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.

15.     Specifically, the amount in controversy exceeds $75,000, exclusive of interest and costs, since Jet Rescue seeks injunctive relief as well as monetary relief in the amount of at least $458,295.19.

16.     This is also a suit between citizens of different states.  Plaintiff Jet Rescue is a citizen of Florida for purposes of diversity jurisdiction.  It is a company organized under the State of Florida with its principal place of business in Boca Raton, Florida.

17.     Further, Defendant Kaiser is a corporation incorporated under the laws of the State of Florida, with its principal place of business located in Oakland, California. Thus, Kaiser is a citizen of California for purposes of diversity jurisdiction.

18.     This Court has personal jurisdiction over Kaiser.  Among other things, Kaiser is headquartered and conducts business in California as one of California's largest health insurers.  Thus, Kaiser's affiliations with the State of California are continuous and systematic so as to render it home in the State of California.

19.     Venue is proper in this Court because the events giving rise to this action took place, in part, in San Diego County, which is located within the Southern District of California.

## FACTUAL BACKGROUND

**A.     Jet Rescue, Its Mission, and Its Qualifications**

20.     Jet Rescue is a licensed provider of domestic and international air ambulance services based in Boca Raton, Palm Beach County, Florida.

21.     Jet Rescue is a worldwide air ambulance service with an attendant fleet of aircrafts that provide bedside to bedside all-inclusive medical transport. The air ambulance flight coordination team manages all aspects of the patient's medical transport by coordinating with the patient's physician, departing and receiving facilities and insurance provider.

22.     The Jet Rescue team includes professionally trained and highly

Recycled Paper

FIRST AMENDED COMPLAINT                              CASE NO. 19-CV-01737-L-NLS

experienced individuals with decades of experience in the air and ground ambulance, medical, communications, and training industries.

23.     In order for Jet Rescue to provide patients with access to lifesaving care, the company must ensure readiness at all times, which includes retaining aircrafts, flight crews, clinical crews, certifications, maintenance, training, logistics, safety, and quality. These costs are mainly fixed; therefore, a portion must be allocated to each flight.

24.     Jet Rescue does not participate in the Kaiser network.

**B.     The Kaiser Plans Providing Coverage for Patients X and Y**

25.     Kaiser is party to the Plans that covers Patients X and Y by which Kaiser agreed to reimburse Patients X and Y for the charges that Plaintiff incurred for her life-saving air transportation.

26.     The Plans are Part C Medicare Advantage plans, offering all the benefits of Original Medicare Parts A and B ("Original Medicare") in addition to supplemental benefits *not covered by Original Medicare*, such as worldwide, international air-ambulance coverage.

27.     Upon information and belief, Plan subscribers pay higher premiums in order to receive supplemental benefits, such as worldwide, international air-ambulance coverage.

28.     Upon information and belief, Plan subscribers pay higher premiums in order to have the right under the Plan to receive medical treatment from the provider of their choice during a life-threatening emergency, including those for out-of-network international air-ambulance services such as those provided by Jet Rescue.

29.     As international air-ambulance benefits are optional supplemental benefits, they are not covered by Medicare, and accordingly, are not subject to Medicare payment guidelines.

30.     As international air-ambulance benefits are not covered by Original Medicare or Medicare payment guidelines, they are not covered by the Medicare Act.

Recycled Paper

31.    Upon information and belief, Plan subscribers bargain for and reasonably expect that payment be made at the providers' usual, customary, and reasonable rates, which are standard rates used by the air ambulance industry.

32.    The Plans provide that patients may receive emergency services from out–of-network providers. The Plans further provide:

> You may get covered emergency medical care whenever you need it, anywhere inside or outside the United States.  Our plan covers ambulance services in situations where getting to the emergency room in any other way could endanger your health.  You may get covered emergency medical care (including ambulance) when you need it anywhere in the world.

33.    The Plans states that, "[c]overed ambulance services include fixed wing, rotary wing, and ground ambulance services to the nearest appropriate facility that can provide care if they are furnished to a member whose medical condition is such that other means of transportation could endanger the person's health or if authorized by our plan."

34.    The Plans cover such services anywhere in the world without prior authorization if one of the following is true:

- You reasonably believe that you have an emergency medical condition and you reasonably believe that your condition requires the clinical support of ambulance transport services.
- Your treating physician determines that you must be transported to another facility because your emergency medical condition is not stabilized and the care you need is not available at the treating facility.

35.    The Plans are devoid of any methodology for reimbursement for claims arising out of its optional supplemental benefits, such as international air ambulance

FIRST AMENDED COMPLAINT                    CASE NO. 19-CV-01737-L-NLS

Recycled Paper

services.  The non-supplemental benefits covered by the Plans, by contrast, are paid according to Original Medicare reimbursement methodologies pursuant to Medicare Guidelines under the Medicare Act.  Specifically, Original Medicare does not provide reimbursement methodologies for the supplemental international air-ambulance benefit covered by the Plan.  Accordingly, the air-ambulance reimbursement rates are optional supplemental benefits and are not dictated by Original Medicare.

**C.    Kaiser Advertises That the Plans Cover Worldwide Emergencies, Including One-Way Ambulance Services**

36.    Kaiser advertises on the Internet that its Medicare Part C Medicare Advantage plans cover all benefits under Medicare Part A and Part B, plus other options.

37.    Kaiser provides online descriptions of the Medicare health plan descriptions available for its Medicare Advantage Plans.

38.    Both the Northern and Southern California Medicare Advantage benefit highlights advertised on the Internet by Kaiser, including the downloadable "Summary of Benefits," provide that Kaiser covers emergency care "anywhere in the world" and covers one-way ambulance trips requiring that the subscriber pay only a $200 co-pay.

39.    Based on Kaiser's representations, Patients X and Y believed they had coverage for emergency services anywhere in the world, including air ambulance transport, requiring Patients X and Y to pay only a nominal co-payment for the medically necessary emergent air ambulance transport.

**D.    Patient X Required Medically Necessary Transportation by Jet Rescue from Yahualica, Jalisco, Mexico to Kaiser San Diego Hospital.**

40.    On or about December 5, 2014, Patient X was admitted to a hospital in Yahualica, Jalisco, Mexico, for severe pneumonia.

41.    Appropriate care was not available for Patient X at the hospital in Yahualica, Jalisco, Mexico and Patient X's condition was too critical to allow for longer transport by ground to an appropriate care facility.

Recycled Paper

42. Patient X, therefore, required an upgraded level of care in the form of an air ambulance with intubation, which Jet Rescue provided, to Kaiser Hospital, in order to receive the care necessary to save life and limb. To date, Kaiser has not disputed this fact.

43. In connection with her transportation, Patient X executed an assignment of benefits ("AOB"), which authorized direct payment to Jet Rescue and assigned "all medical and ambulance benefits (Air or Ground), including major medical benefits to which [she is] entitled."

**E.    Patient Y Required Medically Necessary Transportation by Jet Rescue from Mazatlan, Mexico to Kaiser Hospital.**

44. On or about May 18, 2016, Patient Y was admitted to a hospital in Mazatlan, Mexico, after presenting with symptoms of a cerebral infarction with accompanying paralysis.

45. Appropriate care was not available for Patient Y at the hospital in Mazatlan, Mexico and Patient Y's condition was too critical to allow for longer transport by ground to an appropriate care facility.

46. Patient Y, therefore, required an upgraded level of care in the form of an air ambulance, which Jet Rescue provided, to Kaiser Hospital, in order to receive the care necessary to save life and limb.  To date, Kaiser has not disputed this fact.

47. In connection with his transportation, Patient Y executed an AOB, which authorized direct payment to Jet Rescue and assigned "all medical and ambulance benefits (Air or Ground), including major medical benefits to which [he is] entitled."

**F.    Kaiser Grossly Underpaid the Claims Submitted for Reimbursement by Plaintiffs for the Services Provided to Patients X and Y and Refused Plaintiff's Request for Reasonable Reimbursement.**

48. Patient X's claim of $283,500 was submitted to Kaiser in January 2015 with the direction that Jet Rescue be paid directly.

49. Nearly nine months after the claim for Patient X was submitted for reimbursement, Kaiser requested Proof of Travel and additional Medical Records from

Recycled Paper

FIRST AMENDED COMPLAINT                                    CASE NO. 19-CV-01737-L-NLS

the sending facility.  Jet Rescue provided a timely response to these requests and continued to follow up regarding when Jet Rescue would receive reimbursement for the claim for Patient X.

50.    Despite Jet Rescue's multiple requests, Kaiser did not adjudicate the claim until *a year* later, on January 28, 2016; Kaiser then issued a check to Jet Rescue in the amount of $21,023.13, a mere 7% of the total billed amount, claiming a provider adjustment to the Medicare rate, despite the fact that the services are not covered by Original Medicare.

51.    A second payment was made in early February 2016 for $2,073.51, representing interest and penalties on the $21,023.12 partial payment.

52.    On or about October 12, 2016, Jet Rescue sent a letter to Kaiser requesting a review of the claim.

53.    On or about December 6, 2016, Kaiser issued a letter denying the appeal and stating that the claim had been processed correctly under the Medicare rate.

54.    On December 6, 2016, Kaiser issued a letter stating that it believed its prior decision was both fair and appropriate, and offered Jet Rescue the "opportunity to pursue this claim further through voluntary binding arbitration."  Jet Rescue rejected this offer.

55.    On January 20, 2017, Jet Rescue sent Kaiser's counsel a letter requesting further review of the claim.

56.    From March 2017 through May 2017, counsel for Jet Rescue and counsel for Kaiser engaged in further discussions regarding the appropriateness of payment using the Medicare rate based on Centers for Medicare & Medicaid Services ("CMS") and Medicare Claims Processing Manual ("MCPM") guidelines under the Medicare Act and discussed more fully below.  Kaiser continued to defend its substitution of Medicare rates based on the MCPM guidelines, discussed more fully below, which only contemplate ground transportation, using a United States zip code despite being fully aware that Patient X was loaded onto a Jet Rescue air ambulance for transport in

RECYCLED PAPER

FIRST AMENDED COMPLAINT                                    CASE NO. 19-CV-01737-L-NLS

Yahualica, Jalisco, Mexico.  Throughout these discussions, Kaiser refused to pay Jet Rescue the appropriate amount for its services, and merely offered to arbitrate the matter.  Jet Rescue rejected Kaiser's offer to submit to voluntary binding arbitration.

57.    Discussions resumed in June 2018, whereby Jet Rescue again contacted Kaiser seeking additional payment on the claim.  Despite guidance obtained by Jet Rescue from CMS directly stating that Original Medicare does not contemplate air ambulance transport outside the United States as discussed more fully below, and accordingly, no calculable Medicare allowed rate exists for such services, Kaiser insisted that the closest zip code to the Mexican border should have been applied and that Kaiser appropriately paid the claim based on Medicare rates less Patient X's cost-sharing requirement under the Plan.

58.    The best offer provided by Kaiser was to apply the rural mileage rate to the initial base rate to provide Jet Rescue with another $3,423, increasing the total reimbursement to $26,519.63, or 9% of the usual, reasonable and customary charges.

59.    Because the claim for reimbursement for Patient Y is based on identical issues as the claim for Patient X, any further attempts by Jet Rescue to seek additional reasonable reimbursement from Kaiser would likely be futile.

**G.    Jet Rescue's Rates Are Usual, Reasonable and Customary**

60.    Jet Rescue charges usual, reasonable and customary rates for the international air ambulance services it provides to patients, including those provided to Patients X and Y.

61.    There are no national guidelines that dictate the standard rates charged by air ambulance companies due to the Airline Deregulation Act of 1978 (the "Act"). However, one state's Department of Health, Arizona, publishes its air ambulance service rates.  The most recent Arizona Air Ambulance Service Rate Schedule (the "Arizona Rate Schedule"), dated April 18, 2018, is attached hereto as *Exhibit A*.  The rates published in the Arizona Rate Schedule provide a benchmark for the United States air ambulance industry and are therefore considered usual, customary and

Recycled Paper

reasonable rates.

62.    Jet Rescue's rates are based on those set forth in the Arizona Rate Schedule.

63.    Moreover, other major insurers have agreed that Jet Rescue's rates are usual, reasonable and customary and have reimbursed Jet Rescue at their full billed charges for services rendered by Jet Rescue similar to those provided to Patients X and Y.

**H.    Jet Rescue is Entitled to Reimbursement at Usual, Reasonable and Customary Rates**

64.    The Medicare Act and its regulations do not contemplate benefit rate determinations for supplemental air ambulance coverage where the transport is initiated internationally and ends in the United States because this is an optional supplemental benefit not contemplated by the Medicare reimbursement guidelines nor required to be covered by Original Medicare.

65.    Section 1861(s)(7) of the Social Security Act provides that Original Medicare only covers international air ambulance services when provided in connection with a foreign inpatient hospital stay.  42 C.F.R. § 411.9, 42 C.F.R. § 410.40(f).

66.    42 C.F.R. § 424.121(c) confirms that "[a]ll other services [not in connection with an foreign inpatient stay] furnished outside the United States are excluded from Medicare coverage, as specified in § 411.9 of this chapter."

67.    CMS regulations provide for the calculation of reimbursement rates air ambulance benefits covered by Original Medicare as follows:

> Medicare payment for ambulance services is based on the lesser of the actual charge or the applicable fee schedule amount. The fee schedule payment for ambulance services equals a base rate for the level of service plus payment for mileage and applicable adjustment factors.

42 C.F.R. § 414.610(a).

68.    The base payment rate, where applicable, is adjusted by the geographic

Recycled Paper

FIRST AMENDED COMPLAINT                    CASE NO. 19-CV-01737-L-NLS

adjustment factor ("GAF") and, when applicable, by the appropriate rural adjustment factor ("RAF") to determine the amount of payment. This amount is compared to the actual charge, and the lesser of the charge or the adjusted GAF rate amount is added to the payment rate per mile, multiplied by the number of miles that the beneficiary was transported. 42 C.F.R. § 414.610(c)(2). The GAF is established based on the location where the beneficiary is put in the ambulance ("POP"). Medicare Claims Processing Manual ("MCPM"), Ch. 15 - Ambulance § 20.1.4 - Components of the Ambulance Fee Schedule, at A.3.

69.    While the POP determines the basis for payment under the fee schedule, and the POP is reported by its five-digit zip code, the MCPM guidelines used to determine the appropriate zip code under this Chapter are limited only to ground transport and do not contemplate air ambulance transport. *See* MCPM, Ch. 15 - Ambulance § 20.1.5 - ZIP Code Determines Fee Schedule Amounts.

70.    Accordingly, reimbursement rates for international air ambulance services are not contemplated by Original Medicare where a patient is transferred from a foreign country to the United States and by air ambulance.

71.    Jet Rescue transferred Patients X and Y via air ambulance internationally from Mexico to a United States hospital in San Diego, California. Both transfers for Patient X and Y were not connected to a foreign inpatient stay.

72.    Because no base rate is available due to the use of an air ambulance from a foreign country to the United States, and the Plans do not specify a reimbursement rate for covered international air ambulance services to out of network providers such as Jet Rescue, the most reasonable rate of reimbursement for Jet Rescue is its billed charges, or the usual, reasonable, and customary rate. Any interpretation of the Plans that does not require Kaiser to reimburse Jet Rescue at the usual, reasonable, and customary rate would render the coverage that the Plans provide for international air ambulance services completely illusory, which is impermissible under the law.

73.    Moreover, even though Original Medicare and the Medicare Act

-13-

Recycled Paper

regulations do not cover international air ambulance services or provide for the reimbursement rate determination for same, Jet Rescue's request for billed charges is entirely reasonable, as CMS contemplates a reimbursement rate of billed charges where a base rate according to the Medicare fee schedule is not available for those benefits required and covered by Original Medicare.

I.    **The Medicare Act Does Not Apply to The Claims for Patients X and Y, and Therefore, Jet Rescue was Not Required to Exhaust The Medicare Appeals Process.**

74.    As explained above in Section H, the Claims for Patients X and Y are not claims for Medicare benefits determined by the Medicare Act and its regulations, but instead are for supplemental benefits provided by a third-party, Kaiser.  Because the Medicare Act regulations do not contemplate international air ambulance transport from a foreign country to the United States, the claims for Patient X and Y are outside of the scope of the Medicare Act for determination of reimbursement rates.

75.    The August 16, 2018, request for clarification submitted by counsel for Jet Rescue to CMS, asking how CMS would calculate the rate of reimbursement for an air ambulance transport that originates outside of the United States provides additional support for Jet Rescue's position that the Medicare Act and its regulations do not contemplate resolution of disputes, similar to the one at issue, regarding the rate of reimbursement for certain supplemental benefits under a Medicare Part C Plan, such as the claims for Patients X and Y for international air ambulance transport provided by Jet Rescue.

76.    In response to Jet Rescue's counsel's request, CMS stated that:

> In general, health care you get while traveling outside the U.S. isn't covered by Medicare.  The 50 states, District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa are considered part of the U.S.  Mexico is outside the U.S. For your scenario below Original Medicare generally would not cover ambulance transport outside the U.S. and so there would be no Medicare allowed rate to be calculated.  If Original Medicare doesn't cover it they won't pay for it.

-14-

Recycled Paper

> You also mention that the Medicare Advantage (MA) Plan below offers world-wide ambulance coverage as a supplemental benefit. The details of what the supplemental benefit offers would be found in the MA plan's Evidence of Coverage (EOC). So you will need to check their EOC to determine what the beneficiary's cost sharing is and what the plan will cover. We hold the MA plan responsible for the services they agreed to cover in their Evidence of Coverage.

> Furthermore, …[i]f the ambulance company is non-contracted and feels they were not reimbursed appropriately **they need to work directly with the MA plan**.

(emphasis added).

77.     After further discussion whereby CMS stated that it would contact Kaiser, Jet Rescue's counsel sent a follow up email to CMS on September 28, 2018, for an update regarding the matter at issue.

78.     In response, on October 10, 2018, CMS stated that "CMS do not get involve[d] in payment dispute[s]. We have requested Kaiser to review this claim again to ensure payment is reasonable. As we get more information from Kaiser, we will share with you." CMS followed up the same day providing Jet Rescue with Kaiser's counsel contact information. CMS and Jet Rescue's counsel had no further contact.

79.     Notably, Jet Rescue's counsel submitted its initial request to CMS only after several months of trying unsuccessfully and in good faith, to negotiate for additional payment. During these negotiations, Kaiser did not foreclose these negotiations and did not assert that Jet Rescue was required to follow the Medicare Act appeals process.

80.     In addition, as further support that the Medicare Act and its regulations do not control the payment dispute between Jet Rescue and Kaiser, after Kaiser took over a full year to process the claim for Patient X despite the claim being timely filed within 30-days from the date of service, after Jet Rescue contested the low reimbursement rate it received on the claim for Patient X, nearly two years after the claim was submitted for reimbursement for the medically necessary covered treatment provided

FIRST AMENDED COMPLAINT                    CASE NO. 19-CV-01737-L-NLS

Recycled Paper

to Patient X, Kaiser sent Jet Rescue a letter on December 6, 2016, that offered Jet Rescue the opportunity to pursue the claim further through voluntary binding arbitration.

81.    Accordingly, based on the above statements made by CMS, as well as Kaiser's own offer to arbitrate the dispute, in addition to the discussion in Section E above, which demonstrates that the Medicare Act did not contemplate reimbursement calculation determinations for international air ambulance transfers from a foreign country into the United States, the Medicare Act does not apply, and therefore Jet Rescue was not required to follow the Medicare Act appeals process for the claim for Patient X, or the similarly situated claim for Patient Y.

82.    Moreover, because the Medicare Act and its regulations do not contemplate reimbursement calculation determinations for international air ambulance transport from a foreign country to the United States, pursuing the issue through the Medicare appeals process would be futile.

**J.    Kaiser's Refusal to Reimburse Jet Rescue's Usual, Reasonable and Customary Rates Has Harmed Jet Rescue**

83.    To date, Kaiser has not challenged the medical necessity of the services provided to Patients X and Y.

84.    Kaiser sells plans of insurance that contain supplemental benefits in addition to those provided under Original Medicare.  Upon information and belief, for these supplemental benefits, patients such as Patients X and Y pay increased premiums.  Upon information and belief, patients such as Patients X and Y also pay increased premiums to seek treatment from the provider of their choice, including out-of-network providers like Jet Rescue.  The reimbursement rates paid to Jet Rescue by Kaiser for the services rendered to Patients X and Y do not even cover the operating costs of transporting Kaiser Subscribers.  Based on Kaiser's assurances of coverage for air ambulances under the terms of the Plans, Patient X and Y, and Jet Rescue as their assignee, have an expectation of reasonable reimbursement for supplemental benefits

Recycled Paper

FIRST AMENDED COMPLAINT                                    CASE NO. 19-CV-01737-L-NLS

provided under the Plans.

85.     Kaiser's improper, bad faith, drastic underpayments on Plaintiffs' claim -- representing a payment of less than 10% of billed charges for the lifesaving air ambulance services provided to Patients X and Y, instead of the industry standard usual, reasonable and customary rates charged by Jet Rescue for the services rendered to Kaiser Subscribers -- have caused Jet Rescue monetary damages and threaten Jet Rescue's ability to continue to provide lifesaving air ambulance services to Kaiser Subscribers.

## **FIRST CAUSE OF ACTION**

### *(Breach of Contract as Assignee)*

86.     Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

87.     Patients X and Y, and Kaiser, are parties to individual Plans.

88.     Patients X and Y assigned their rights to benefits to Jet Rescue pursuant to an AOB.

89.     Any conditions requisite to payment for Patient X's and Y's treatment pursuant to the Plans have been satisfied or waived.

90.     Jet Rescue has incurred substantial costs treating Patients X and Y.

91.     The Plans provide that patients may receive emergency services from out of network providers. The Plans further provide,

> You may get covered emergency medical care whenever you need it, anywhere inside or outside the United States.  Our plan covers ambulance services in situations where getting to the emergency room in any other way could endanger your health.  You may get covered emergency medical care (including ambulance) when you need it anywhere in the world.

92.     The Plans state that, "[c]overed ambulance services include fixed wing,

-17-

Recycled Paper

rotary wing, and ground ambulance services to the nearest appropriate facility that can provide care if they are furnished to a member whose medical condition is such that other means of transportation could endanger the person's health or if authorized by our plan."

93.    By virtue of the AOBs executed by Patients X and Y, Jet Rescue was assigned the right to receive reimbursement under the Plans for the services that it rendered to Patients X and Y.  Pursuant to said AOBs, Kaiser is contractually obligated to reimburse Jet Rescue for these services.

94.    In breach of the Plans, Kaiser failed to make payment of benefits to Jet Rescue in the manner and amounts required under the terms of the Plans at the usual, reasonable and customary rate.  Kaiser instead interpreted the Plans' terms ambiguity in favor of Kaiser to the detriment of Jet Rescue.

95.    As set forth more fully above, upon information and belief, the Plans did not prohibit Patients X and Y from assigning their rights to benefits under the Plans to Jet Rescue, including the right of direct payment of benefits under the Plans to Jet Rescue.

96.    Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Jet Rescue, Kaiser has waived any purported anti-assignment provisions, has ratified the AOBs to Jet Rescue, and/or is estopped from using any purported anti-assignment provisions against Jet Rescue due to its course of dealing with and statements to Jet Rescue as out-of-network providers, discussed more fully above.

97.    As the result of Kaiser's failure to comply with the terms of the Plans, Jet Rescue, as the assignee of Patients X and Y, has suffered damages and lost benefits, for which it is entitled to damages from Kaiser, including unpaid benefits, restitution, interest, and other contractual damages sustained by Jet Rescue.

WHEREFORE, Jet Rescue requests a judgment against Kaiser in an amount to be determined but no less than $458,295.19, together with attorney's fees, interests,

-18-

costs of bringing a suit, and all other relief deemed appropriate by this Court.

## SECOND CAUSE OF ACTION

### *(Breach of Contract as Third-Party Beneficiary)*

98.    Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

99.    Patients X and Y, and Kaiser, are parties to individual Plans.

100.    Jet Rescue is a third-party beneficiary under the Plans, as Kaiser intended to reimburse providers under the Plans for services provided to Patient's X and Y.

101.    Jet Rescue is a third-party beneficiary of the Plans and is entitled to recover benefits due to Patients X and Y, and to enforce their rights under the Plans and policies.

102.    Any conditions requisite to payment for Patient X's and Y's treatment pursuant to the Plans have been satisfied or waived.

103.    Jet Rescue has incurred substantial costs treating Patients X and Y.

104.    The Plan provides that patients may receive emergency services from out of network providers. The Plans further provide,

> You may get covered emergency medical care whenever you
> need it, anywhere inside or outside the United States.  Our
> plan covers ambulance services in situations where getting to
> the emergency room in any other way could endanger your
> health.  You may get covered emergency medical care
> (including ambulance) when you need it anywhere in the
> world.

105.    The Plans states that, "[c]overed ambulance services include fixed wing, rotary wing, and ground ambulance services to the nearest appropriate facility that can provide care if they are furnished to a member whose medical condition is such that other means of transportation could endanger the person's health or if authorized by our plan."

Recycled Paper

FIRST AMENDED COMPLAINT                    CASE NO. 19-CV-01737-L-NLS

106.    In breach of the Plans, Kaiser failed to make payment of benefits to Jet Rescue in the manner and amounts required under the terms of the Plans at the usual, reasonable and customary rate.  Kaiser instead interpreted the Plans' terms ambiguity in favor of Kaiser to the detriment of Jet Rescue.

107.    As the result of Kaiser's failure to comply with the terms of the Plans, Jet Rescue, as third-party beneficiary under the Plans, has suffered damages and lost benefits, for which it is entitled to damages from Kaiser, including unpaid benefits, restitution, interest, and other contractual damages sustained by Jet Rescue.

WHEREFORE, Jet Rescue requests a judgment against Kaiser in an amount to be determined but no less than $458,295.19, together with attorney's fees, interests, costs of bringing a suit, and all other relief deemed appropriate by this Court.

## THIRD CAUSE OF ACTION

### *(Breach of the Duty of Good Faith and Fair Dealing)*

108.    Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

109.    Despite Jet Rescue's repeated demands for benefits under the Plans as Patient X's and Patient Y's assignee, and despite the terms of the Plans requiring Kaiser to pay such benefits, Kaiser, unreasonably and in bad faith, refuses to fully reimburse Jet Rescue.

110.    By issuing the Plans, Kaiser assumed a duty of good faith and fair dealing to Patients X and Y, and by assignment, Jet Rescue.

111.    Kaiser's duty of good faith and fair dealing to Jet Rescue is implied by law and by the insurance relationship between Kaiser and Patients X and Y, and by assignment, Jet Rescue.

112.    The Plans contain an implied promise that Kaiser will deal fairly and in good faith with Patients X and Y, and their assignees, and will do nothing to injure, frustrate, or interfere with Patient X's and Patient Y's, or their assignees' right to receive the benefits of the Plans.

RECYCLED PAPER

FIRST AMENDED COMPLAINT                                    CASE NO. 19-CV-01737-L-NLS

113.    The covenant of good faith and fair dealing obligates each party to refrain from taking any action that would deprive the other of the benefits of the contract or to cause undue hardship or harm to the other party.

114.    Kaiser has breached its duty of good faith and fair dealing because it has engaged in conduct calculated, in bad faith, to further their own economic interests at the expense of Patients X and Y, and Jet Rescue as their assignees.

115.    With respect to benefits under the Plans for Patient X's and Y's medical transport, Kaiser has breached is duty of good faith and fair dealing by, among other things:

a.    Failing to acknowledge and act with reasonable promptness upon communications with respect to Jet Rescue's claim arising under the Plans;

b.    Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Jet Rescue's claim in which liability had become reasonably clear;

c.    Compelling Jet Rescue to institute litigation to recover amounts due under the Plans by refusing to fully reimburse the claim;

d.    Delaying its action upon Jet Rescue's legitimate requests to adjudicate the claims;

e.    Unreasonably, inadequately, and improperly investigating Jet Rescue's claims and requests for insurance coverage;

f.    Violating applicable statutory and regulatory provisions governing the business of insurance;

g.    Willfully and in bad faith interpreting the Plans' provisions and law so as to resolve ambiguities and uncertainties against Jet Rescue and to Kaiser's own interest;

h.    Denying Jet Rescue full payment on the basis of the size of claims, rather than on the particular facts of Jet Rescue's claim, despite the reasonableness of the amount of the claim based on industry standard billed

-21-

Recycled Paper

rates;

        i.    Fraudulently misrepresenting to Patients X and Y, and Jet Rescue as their assignee, that the supplemental benefits, for which, under information and belief, Patients X and Y paid a higher premium for, included coverage for out-of-network international air-ambulance companies at reasonable rates.

116.    In doing so, and otherwise, Kaiser has failed to be honest and faithful to the agreed purposes of the contract and consistent with the reasonable expectations of Patient X and Jet Rescue as her assignee.

117.    As a result of Kaiser's breach of its duty of good faith and fair dealing, Jet Rescue is entitled to recover money damages and extra-contractual relief.

WHEREFORE, Jet Rescue requests a judgment against Kaiser in an amount to be determined but no less than $458,295.19, together with attorney's fees, interests, costs of bringing a suit, and all other relief deemed appropriate by this Court.

## FOURTH CAUSE OF ACTION

### *(Quantum Meruit)*

118.    Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

119.    Jet Rescue has conferred upon Kaiser the benefit of providing treatment and lifesaving emergency transportation to Patients X and Y.

120.    At the time Jet Rescue provided Patients X and Y with lifesaving transportation, Jet Rescue reasonably expected remuneration from Kaiser in the form of its billed charges, which represent industry standard usual, reasonable and customary rates, because of the Plans' language providing coverage for world-wide emergency medical services.

121.    Kaiser reimbursed Jet Rescue only 7% of billed charges for Patient X and 8% of billed charges for Patient Y, which does not even cover the costs of Jet Rescue's operations in transporting Patients X and Y.

122.    By denying proper payment to Jet Rescue for the treatment Jet Rescue

RECYCLED PAPER

FIRST AMENDED COMPLAINT                     CASE NO. 19-CV-01737-L-NLS

provided to Patients X and Y, Kaiser has been unjustly enriched.

123.   As the result of Kaiser's unlawful, unjust, and wrongful acts, Jet Rescue suffered and continues to suffer damages, and it is owed restitution from Kaiser.

WHEREFORE, Jet Rescue requests a judgment against Kaiser in an amount to be determined but no less than $458,295.19, together with attorney's fees, interests, costs of bringing a suit, and all other relief deemed appropriate by this Court.

### FIFTH CAUSE OF ACTION

*(Violation of California's Unfair Competition Law ("UCL")*

*California Business and Professions Code § 17200,* **et seq.***)*

124.   Jet Rescue repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

125.   The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

126.   The UCL imposes strict liability.  Jet Rescue need not prove that Kaiser intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices - but only that such practices occurred.

127.   Patients X and Y, and Kaiser, are parties to individual Plans.

128.   Patients X and Y assigned their rights to benefits to Jet Rescue pursuant to an AOB.

129.   Patients X and Y paid higher premiums for supplemental out-of-network benefits in addition to Original Medicare, including international air ambulance services, such as those provided to Patients X and Y by Kaiser.

130.   Under the "unfair" prong of the UCL, a business practice is "unfair" if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

FIRST AMENDED COMPLAINT                          CASE NO. 19-CV-01737-L-NLS

Recycled Paper

131.    Kaiser's actions constitute "unfair" business practices because, as alleged above, upon information and belief, Patients X and Y paid Kaiser higher premiums based on Kaiser's representations that the Plans would provide out-of-network supplemental insurance coverage in addition to Original Medicare coverage, including international air ambulance services, and then unreasonably and in bad faith, drastically underpaid the claims for Patients X and Y, at 7% and 8% of billed charges. Kaiser based its underpayment, in bad faith, on interpretation of the Plans' provisions and law so as to resolve ambiguities and uncertainties in favor of Kaiser and to Jet Rescue's detriment.  Kaiser's acts engaged in immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

132.    The harm to Jet Rescue, as the assignee of Patients X and Y, outweighs the utility of Kaiser's practices.  There were reasonable alternatives available to further Kaiser's legitimate business interests other than the misleading and deceptive conduct described herein.

133.    Under the "fraudulent" prong of the UCL, a business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

134.    Kaiser's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Patients X and Y and Jet Rescue, as Patients X's and Patient Y's assignee, and are highly likely to deceive members of the consuming public.  Patients X and Y relied on Kaiser's fraudulent and deceptive representations regarding the Plans' coverage for out-of-network air ambulance services as supplemental coverage in addition to Patients X's and Y's Original Medicare coverage.  These misrepresentations played a substantial role in Patient X's and Y's decision to purchase the Plans from Kaiser.  These misrepresentations also played a substantial role in Jet Rescue providing its services to Patients X and Y, expecting reasonable reimbursement for the services provided based on Patients X's and Y's coverage under the Plans.

135.    Kaiser's practices, as set forth above, have misled Patients X and Y, and

Recycled Paper

Jet Rescue, as their assignee, and the public in the past and will continue to mislead in the future.  Consequently, Kaiser's practice of improperly, and in bad faith, substituting Original Medicare rates for international air ambulance and drastically underpaying medically necessary covered charges, despite leading Patients X and Y, and Jet Rescue as their assignee, to believe there was reasonable coverage for such services, constitutes an unfair and fraudulent business practice within the meaning of the UCL.

136.    Kaiser's violation of the UCL, through its unfair and fraudulent business practices, are ongoing and present a continuing threat to Jet Rescue and members of the public who will be deceived into purchasing Kaiser Plans for supplemental out-of-network coverage of services including international air ambulance services.  These business practices drastically underpaid Jet Rescue for its medically necessary international air ambulance services, for which Jet Rescue suffered monetary damages.

WHEREFORE, pursuant to the UCL, Jet Rescue is entitled to preliminary and permanent injunctive relief ordering Kaiser to cease this unfair business practice of substituting Original Medicare rates for industry standard usual, reasonable and customary rates, for out-of-network international air ambulance services provided to Kaiser Subscribers by Jet Rescue, as well as disgorgement and restitution to Jet Rescue for any revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## CONDITIONS PRECEDENT

137.    All conditions precedent have been performed or have occurred.

## JURY TRIAL DEMAND

138.    Plaintiff Jet Rescue hereby demands a trial by jury in the above entitled action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendant as follows:

Recycled Paper

FIRST AMENDED COMPLAINT                                     CASE NO. 19-CV-01737-L-NLS

1. For actual damages in an amount to be proven at trial, but no less than $458,295.19, plus interest;

2. For costs of suit;

3. For attorneys' fees and costs as allowed by contract and/or at law;

4. For preliminary and permanent injunctive relief ordering Kaiser to cease this unfair business practice of substituting Original Medicare rates for industry standard usual, reasonable, and customary rates for out-of-network international air ambulance services from a foreign country to the United States provided to Kaiser Subscribers by Jet Rescue;

5. For disgorgement and restitution to Jet Rescue for any revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable, and

6. For all other relief as the Court may deem just and proper.

Dated: October 8, 2019                    K&L GATES LLP


                                          */s/ Damon M. Pitt*
                                          Caitlin C. Blanche
                                          Damon M. Pitt
                                          Attorneys for Plaintiff GLOBAL
                                          RESCUE JETS, LLC, a Delaware
                                          corporation d/b/a JET RESCUE

FIRST AMENDED COMPLAINT                          CASE NO. 19-CV-01737-L-NLS

RECYCLED PAPER

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **FIRST AMENDED COMPLAINT** has been served on October 8, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Date:  October 8, 2019                    By:  _/s/  Damon M. Pitt_____
                                                Damon M. Pitt

RECYCLED PAPER

# EXHIBIT A

## ARIZONA AIR AMBULANCE SERVICE RATE SCHEDULE
ARIZONA DEPARTMENT OF HEALTH SERVICES, Bureau of Emergency Medical Service & Trauma System
150 North 18th Avenue, Suite 540, Phoenix, AZ 85007-3248
Phone: (602)364-3150; Fax (602) 364-3597.
**In accordance with Federal Regulations, the State is not allowed to regulate air ambulance provider routes or rates

Updated: April 18, 2018

| Entity dba | License # | Fixed Wing *Base Rate | Fixed Wing **Mileage Rate | Rotor-Wing *Base Rate | Rotor-Wing **Mileage Rate | As Submitted On |
|---|---|---|---|---|---|---|
| Aerocare Medical Transport Systems, Inc. (IL) | 730 | $15,000.00 | $290.00 (500 miles or less) $250.00 (over 500 miles) | N/A | N/A | 03/30/14 |
| AirCARE1 International | 739 | $11,000.00 | $75.00 | N/A | N/A | 01/20/15 |
| Air Ambulance Specialist Inc | 746 | $8,400.00 | $24.00 | N/A | N/A | 10/14/15 |
| Air Evac | 10 | $16,075.00 | $209.00 (First 70 miles) $84.00 (After 70 miles) | $25,678.00 | $283.00 (First 70 miles) $113.00 (After 70 miles) | 05/29/15 |
| Air EMS, Inc. | 803 | $15,500.00 | $250.00 | N/A | N/A | 02/13/18 |
| AirEvac International | 799 | $16,000.00 | $185.00 | N/A | N/A | 06/24/16 |
| Angel Medflight | 750 | $15,500.00 | $295.00 (500 miles or less) $275.00 (Over 500 miles) | N/A | N/A | 06/08/15 |
| Classic Air Care LLC. dba Classic Lifeguard dba Classic Air Care dba Classic Aeromedical dba Classic Helicopter Group | 194 | $17,250.00 | $265.00 | $17,250.00 | $265.00 | 02/22/16 |
| CICMF, LLC dba Castle MedFlight | 804 | $17,163.00 (Non-Specialty) $25,000.00 (Specialty) | $115.00 (Non Specialty) $250.00 (Specialty) | N/A | N/A | 04/04/18 |
| CSI Aviation, Inc. | 801 | $15,000.00 | $125.00 | N/A | N/A | 10/25/16 |
| Guardian Flight LLC | 14 | $17,900.00 | $179.00 | $17,900.00 | $179.00 | 01/09/18 |
| Guardian Air | 330 | $13,100.00 | $175.00 | $15,600.00 | $187.00 | 07/01/15 |
| International Life Flight | 793 | $15,500.00 | $275.00 (500 miles or less) $185.00 (over 500 miles) | N/A | N/A | 04/28/15 |
| Life Guard International dba Flying ICU | 779 | $11,750.00 | $125.00 | N/A | N/A | 06/30/15 |
| Med-Trans Corporation dba Arizona LifeLine | 197 | N/A | N/A | $13,750.00 | $145.00 | 08/25/16 |
| Rocky Mountain Holdings LLC. dba Air Methods Corp. dba Lifenet dba Native Air dba TriState Care Flight | 17 | $20,588.00 | $171.00 | $19,998.00 | $290.00 | 10/24/16 |
| Reva, Inc. | 778 | $15,900.00 | $122.00 | N/A | N/A | 08/07/17 |
| REACH Air Medical Services, LLC. | 800 | $37,365.00 | $221.00 (100 miles or less) $61.00 (over 100 miles) | $37,365.00 | $329.00 | 09/22/16 |
| San Juan Regional Medical Center | 765 | $10,070.00 | $52.00 | $10,070.00 | $83.00 | 02/26/16 |
| Sunrise Air Ambulance, LLC | 773 | $13,800.00 | $155.00 | $19,000.00 | $245.00 | 08/17/17 |
| Tri-State Care Flight | 464 | $16,921.00 | $261.00 | $16,225.00 | $268.00 | 12/01/16 |

provider, exclusive of mileage costs.
** Mileage - Air mileage on patient loaded miles flown.

# EXHIBIT A, PAGE 1