UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL RESCUE JETS LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>                    Defendant. | Case No.:  19cv1737-L-NLS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (doc. no. 12)** |

Pending before the Court is Defendant's motion to dismiss (doc. no. 12) Plaintiff's first amended complaint for failure to exhaust administrative remedies under the Medicare Act.  Plaintiff filed an opposition and Defendant replied.  The Court decides the motion on the briefs without oral argument. *See* Civ. L. R. 7.1 (d.1). For the reasons stated below, Defendants' motion to dismiss is granted.

**I.    BACKGROUND**

Plaintiff Global Rescue Jets, Inc. provided medically-necessary transportation for Patient X from Yahualica, Jalisco, Mexico to Kaiser Permanente Medical Center in San Diego, California incurring charges of $283,500.  It provided medically-necessary transport for Patient Y from Mazatlan, Mexico to the same hospital in San Diego, incurring charges of $232,700.  Patients X and Y ("Patients") were enrolled in Medicare

Advantage Plans ("MA plans") to which Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser") was a party.

As alleged in the operative complaint, the Patients' MA plans provided for coverage of life-saving international air ambulance transportation, which was not covered by Medicare, but was an optional supplemental benefit[1] provided under the plans for which the Patients paid higher premiums to Kaiser. Under the plans, Kaiser agreed to reimburse them for such charges. When Plaintiff provided air ambulance services to the Patients, they assigned their claims against Kaiser. Kaiser has refused to fully reimburse Plaintiff for its charges. It paid what it considers the "applicable Medicare rate" (Kaiser Mem. of P.&A. in Supp. of Mot. to Dismiss, doc. no. 12-1, at 5), which represents approximately 8% of the charges.

Plaintiff filed a complaint in State court against Kaiser. Kaiser removed the action to this Court. In the operative complaint Plaintiff alleges, in its capacity as the Patients' assignee, or, alternatively, third party beneficiary, breach of contract, breach of duty of good faith and fair dealing, quantum meruit, and unfair competition. It seeks damages, disgorgement and restitution of Kaiser's revenues associated with unfair competition, and injunctive relief.

## II.   DISCUSSION

Kaiser moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), for failure to exhaust administrative remedies under the Medicare Act. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[2] They presumptively lack jurisdiction over civil actions and the burden of

---

[1]   Optional supplemental benefits are purchased at the enrollees' option and are paid in full by the enrollee in the form of premiums or cost-sharing. 42 C.F.R. § 422.100(c)(2)(ii).

[2]   Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from quotations.

establishing the contrary rests upon the party asserting it.  *Id.*  As here, a Rule 12(b)(1) motion may be framed as a "facial" attack on the allegations in the complaint.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004).  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  *Id.*

Kaiser argues that Plaintiff is not entitled to judicial review of Kaiser's alleged failure to fully reimburse Plaintiff's air ambulance charges because Plaintiff failed to exhaust administrative remedies under the Medicare Act.  The Medicare Act, 42 U.S.C. § 1395 *et seq.*, "establishes a federally subsidized health insurance program to be administered by the Secretary [of Health and Human Services]."  *Heckler v. Ringer*, 466 U.S. 602, 605 (1984).

The Act is divided into four parts.  *See* 42 U.S.C. § 1395 *et seq.*  Parts A and B constitute "Original Medicare."  In 1997, Congress enacted Part C, Medicare+ Choice Program, which gives Medicare beneficiaries the option to contract with private health plans to obtain benefits normally available under Parts A and B, as well as additional supplemental coverage.  Part D is Voluntary Prescription Drug Benefit Program.

Private health plans administered under Part C are referred to as Medicare Advantage ("MA") plans, and private organizations providing them are referred to as MA organizations.  42 U.S.C. § 1395w-21. Kaiser is an MA organization.

Part C obligates MA organizations to provide basic benefits covered by Parts A and B of the Medicare Act.  42 C.F.R. § 422.100(a), (c)(1).  It further authorizes MA organizations to provide mandatory and optional supplemental benefits that are not covered by Medicare  42 U.S.C. § 1395w-22(a)(3)(B); 42 C.F.R. § 422.100(c)(2).

MA organizations contract with Centers for Medicare and Medicaid Services ("CMS")[3] to provide MA plans to persons eligible for Medicare, who exchange their

---

[3]   CMS is a division of the United States Department of Health and Human Services charged with administering the Medicare Program.

benefits under Part A and B for enrollment in an MA plan.  42 U.S.C. § 1395w-21. MA organizations must comply with the standards set forth in Part C.  42 U.S.C. § 1395w-27(a). The government pays MA organizations monthly fees to provide covered services to the enrollees.  42 U.S.C. § 1395w-23.

MA organizations contract with health care providers for services to their MA plan enrollees and agree on the reimbursement rate for the services.  MA plans must provide coverage for emergency services even if the provider who rendered them had no contract with the MA organization.  42 C.F.R. § 422.100(b)(1).  Providers who are not contracted to the MA organization are referred to as "noncontracting providers."  42 C.F.R. § 422.100(b). Medicare regulations have been promulgated to regulate the relationship between noncontracting providers and MA organizations.  42 C.F.R. § 422.100-422.133.

"The Medicare Act authorizes the Secretary to determine what claims are covered by the Act in accordance with the regulations proscribed by him."  *Heckler*, 466 U.S. at 605.  "Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a final decision on the claim in the same manner as is provided in 42 U.S.C. § 405(g)."  *Id.*; *see also* 42 U.S.C. § 405(g) (judicial review "after any final decision of the Commissioner of Social Security made after a hearing").  "[A] final decision is rendered on a Medicare claim only after the individual claimant has pressed its claim through all designated levels of administrative review."  *Heckler*, 466 U.S. at 606.

The Act mandates MA organizations to provide "meaningful procedures for hearing and resolving grievances between the organization . . . and enrollees," including grievances regarding the amount the enrollee is required to pay for a service under the plan. 42 U.S.C. § 1395w-22(f)-(g).  It also provides that section 405(g) applies to the MA organization's review process.  *Id.* § 1395w-22(g)(5).

The administrative review process for grievances under an MA plan is outlined in 42 CFR § 422.560 et seq. (Grievances, Organization Determinations and Appeals for the Medicare Advantage Program).  For example, at the outset each MA organization "must

have a procedure for making timely organization determinations (in accordance with the requirements of this subpart) regarding the benefits an enrollee is entitled to receive under an MA plan, including basic benefits as described under § 422.100(c)(1) and mandatory and optional supplemental benefits as described under § 422.102, and the amount, if any, that the enrollee is required to pay for a health service." 42 C.F.R. § 422.566(a).

### A.  Government Officer or Employee

Plaintiff argues that although the Act and the regulations provide for an administrative review process, the process is optional because section 405(g) does not limit other avenues of review, and section 405(h) precludes judicial review only for claims against the government or its officers or employees.  *See* 28 U.S.C. § 405(g); *see also* 28 U.S.C. § 405(h) ("No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.").  Plaintiff further argues that MA organizations are not federal officers or employees for purposes of the exhaustion requirement.  In this regard, Plaintiff raises an issue of first impression.

In the absence of binding authority on point, the Court finds persuasive the reasoning of *Prime Healthcare Huntington Beach v. SCAN*, 210 F. Supp. 3d 1225 (C.D. Cal. 2016).  As here, *Prime* involved a claim by a noncontracting provider of ambulance services against an MA organization under Part C of Medicare Act for full reimbursement of charges for emergency ambulance services provided to MA plan enrollees.  *Id*. at 1228.  As Plaintiff here, Prime Healthcare filed the action as an assignee and/or third-party beneficiary and asserted essentially the same state claims.  *Id.*  As Kaiser here, SCAN, an MA organization, moved to dismiss for failure to exhaust administrative remedies under the Medicare Act.  *Id.*

Based on facts similar to those present here and a thorough analysis of appellate case law instructive on the issue, *Prime Healthcare* addressed the threshold question whether an MA organization is a government officer or employee for purposes of section

405(h).  210 F. Supp. 3d at 1229-31.  It held that "even where suit is brought against an MAO, § 405(h) limits this Court's jurisdiction over unexhausted claims to those that do not 'arise under' Medicare."  *Id.* at 1231.  This Court adopts *Prime Healthcare's* holding.

**B.      Arising Under**

The bar to judicial review provided by section 405(h) applies only to "claim[s] arising under" the Medicare Act.  42 U.S.C. § 405(h); *see also Heckler*, 466 U.S. at 605.  The "arising under" standard is construed "quite broadly."  *Heckler*, 466 U.S. at 615.

> The Supreme Court has identified two circumstances in which a claim "arises under" the Medicare Act: (1) where the "standing and the substantive basis for the presentation of the claims" is the Medicare Act; and (2) where the claims are "inextricably intertwined" with a claim for Medicare benefits.

*Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th Cir. 2010) (citing *Heckler*, 466 U.S. at 614, 615).  State law claims may "arise under" the Medicare Act if they fit one of these categories, for example, if "at bottom, a plaintiff is complaining about denial of Medicare benefits."  *Id.* at 1142-43.

Plaintiff argues that its claims do not "arise under" the Medicare Act because they are based on an MA plan's optional supplemental benefit, which expressly is "not covered by Medicare" and is "purchased at the option of the MA enrollee and paid for in full, directly by (or on behalf of) the Medicare enrollee, in the form of premiums or cost-sharing."  42 C.F.R. § 422.100(c)(2)(ii).  Plaintiff further argues that emergency air ambulance services originating abroad and ending in the United States, such as the services Plaintiff provided to the Patients, are in any event not covered by Medicare.  *See* 42 C.F.R. § 410.40(g) ("Specific limits on coverage of ambulance services outside the United States.  If services are furnished outside the United States, Medicare Part B covers ambulance transportation to a foreign hospital only in conjunction with the beneficiary's admission for medically necessary inpatient services as specified in subpart H of part 424 of this chapter."); § 411.9 ("(a) Basic rule.  Except as specified in paragraph (b) of this section, Medicare does not pay for services furnished outside the United States.  [¶]  (b)

Exception.  Under the circumstances specified in subpart H of part 424 of this chapter, payment may be made for covered inpatient services furnished in a foreign hospital and . . . for covered . . . ambulance service furnished in connection with those inpatient services . . ..."): § 424.121 ("(b) Medicare Part B pays for certain . . . ambulance services furnished in connection with covered inpatient care in a foreign hospital, as specified in § 424.124.  [¶]  (c) All other services furnished outside the United States are excluded from Medicare coverage, as specified in § 411.9 of this chapter.").

Kaiser counters that Plaintiff's claims arise under the Medicare Act because the resolution of the dispute over the rate of reimbursement for Plaintiff's services requires interpretation of the Act and its regulations.  Specifically, Kaiser maintains that Medicare rates apply to international ambulance services such as those provided by Plaintiff because those rates apply to international air ambulance services provided "in connection with" inpatient services furnished outside the United States.  Both Patients were transported from a hospital in Mexico to a hospital in the United States.  According to Kaiser, because the transport originated at a hospital abroad, it was provided "in connection" with services at the foreign hospital stay.  Based on the foregoing, the dispute between the parties turns on the interpretation of "in connection with" as used in Medicare regulations.  Plaintiff's claims are therefore "inextricably intertwined" with the Medicare Act.

Alternatively, Kaiser argues that Plaintiff's claims are "inextricably intertwined" with the Medicare Act because Plaintiff seeks to recover reimbursement for alleged shortfalls for benefits under an MA plan.  Although framed as state law claims, in this action Plaintiff is attempting to recover a greater rate of reimbursement for the services it provided to the Patients under their MA plans.  It is asserting its claims as the Patients' assignee under their MA plans.

All benefits provided by an MA plan, even if optional, are subject to review by CMS.  *See* 42 C.F.R. § 422.100(f) ("CMS reviews and approves MA benefits and associated cost sharing using written policy guidelines and requirements in this part and

other CMS instructions . . ..").  Kaiser provides all benefits under its MA plans pursuant to contract with CMS.  *See* 42 U.S.C. § 1395w-27.

"[C]laims dealing with the 'appropriateness of [a defendant's] decisions with respect to the compensation [a provider] should have received for the services it provided to Medicare beneficiaries' are 'inextricably intertwined' with claims for Medicare benefits." *Prime Healthcare*, 210 F. Supp. 3d at 1233 (quoting *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1114 (9th Cir. 2003)) (all alterations in *Prime Healthcare*).  Because this action presents a dispute over denial of benefits under Medicare plans, it is "inextricably intertwined" with the Medicare Act.

For the foregoing reasons, Plaintiff's claims arise under the Medicare Act. Plaintiff has not exhausted administrative remedies for its claims as provided by 42 U.S.C. §§ 405(g) and 1395w-22(g)(5).  Judicial review of the claims is therefore precluded by 42 U.S.C. § 405(h).

**C.    Waiver**

Nevertheless, Plaintiff argues that exhaustion of administrative remedies should be waived in this case.  To merit a waiver,

> The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility).

*Johnson v. Shalala,* 2 F.3d 918, 920 (9th Cir. 1993).

An action is collateral to a claim for benefits if it does not seek an award of benefits or presents an attack on an administrative policy which warrants relief independently of any particular claim for benefits.  *Kildare v. Saenz,* 325 F.3d 1078, 1082-83 (9th Cir. 2003).  Conversely, when the action is based on a dispute about benefits in an individual case, it is not collateral to the underlying claim for benefits.  *Id.* at 1083.  Plaintiff seeks to recover as the Patients' assignee or third-party beneficiary what it claims to be a shortfall in Kaiser's payment of benefits under the Patients' MA

plans.  Accordingly, the claims in this action are not collateral to claims for benefits under the MA plans.

A colorable showing of irreparability "is one that is not wholly insubstantial, immaterial, or frivolous." *Johnson*, 2 F.3d at 922.  Plaintiff alleges that the rates Kaiser has paid do not even cover the operating costs of transporting the Patients, which threatens Plaintiff's ability to continue to provide the service to Kaiser's enrollees.  Plaintiff does not contend that Kaiser's failure to fully reimburse Plaintiff's charges is presenting a danger of putting it out of business.  Plaintiff cites no authority for the proposition that financial damage to a company is sufficient for a colorable showing of irreparability.  Generally, economic harm must damage the plaintiff "in a way not recompensable through retroactive payments," which, in cases of individuals, amounts to "several months without food, shelter or other necessities." *See Johnson*, 2 F.3d at 922; *see also Kildare*, 325 F.3d at 1083.  Plaintiff has therefore not alleged that requiring exhaustion of administrative remedies would cause it irreparable harm.

Finally, the waiver analysis must account for the policies underlying the exhaustion requirement by considering whether administrative remedies would be futile. *Johnson*, 2 F.3d at 922.

> In most cases, the exhaustion requirement allows the agency to compile a detailed factual record and apply agency expertise in administering its own regulations.  The requirement also conserves judicial resources.  The agency will correct its own errors through administrative review.

*Id.*  In cases where the plaintiff seeks to change an administrative rule or policy which is independent of any particular claim for benefits, exhaustion would be futile.  *Id*. at 922-23.  On the other hand, where the resolution of the dispute requires interpretation of the regulations in the context of a particular claim for benefits, and administrative review could fix the alleged error, exhaustion is not futile.  *Kildare*, 325 F.3d at 1084.  Plaintiff is dissatisfied with Kaiser's disposition of its claims for benefits, which disposition
/ / / / /

hinges on the disputed interpretation of Medicare regulations.  Exhaustion of administrative remedies therefore would not be futile in this case.

Because Plaintiff has not alleged collaterality, irreparability and futility of administrative review, its waiver arguments are rejected.

### III.  CONCLUSION

For the reasons stated above, Kaiser's motion to dismiss for failure to exhaust administrative remedies is granted.

**IT IS SO ORDERED.**

Dated:  November 30, 2020

_____
Hon. M. James Lorenz
United States District Judge